WARDROP v. DUNLOP, Executrix, *et al.,* appellants.

*Agency — presumption of authority to receive payment from possession of promissory note — unauthorized acts — ratification of.*

J., who held a note against D., went to Scotland to reside and left the note with R., for safe-keeping. Two payments were made by D. to R. upon this note, which were forwarded to J. R. died, and his son W. took possession of the note. Afterward J. wrote to W. that he had written to D. to make up the interest on the note and forward it, and authorized W. to give a receipt for the amount, and directed W. to retain the note until further directions. Some years after, in reply to a request from D., J. gave him further time for payment, asking him to remit a due bill for the amount. J. informed W. what he had done, and requested him to still keep the note. Two years after, in 1869, D. made a payment to W., which was indorsed by W. upon the note. W., by letter, notified J. of this payment, but received no answer to the letter. After this, W. received other payments from D. and his executors, which were indorsed upon the note, but no notice thereof

given to J. In 1872, J., in answer to another letter from W., wrote that he was having prepared documents to enable W. to collect the note, and stated the amount to be after the sum " paid to you," in 1869, $4,112, and interest. *Held*, (1) that W. had no authority to receive payments on the note; (2) that the possession of the note by him under the circumstances justified no inference of authority to receive payment; (3) that J. by remaining silent after receiving notice of the payment and by his acknowledgment to W., acquiesced in and ratified W.'s act in receiving payment in 1869 ; and (4) that the sanction of that payment justified D. and his executors in believing that W. had authority to receive the subsequent payments.

APPEAL from judgment entered upon referee's report upon a claim against the testator's estate referred under the statute.

On the 19th of June, 1854, Archibald A. Dunlop gave his promissory note to John Wardrop, payable to his order, for $3,600, with interest at six per cent; and John Wardrop, during the same year, when leaving this country for Scotland, where he had previously and has since resided, left the note with his cousin, Robert Wardrop, of Newburg.

Robert Wardrop gave a receipt for the note, in which he said it was left with him for *safe-keeping*, but Dunlop had no knowledge or notice of such receipt.

In 1856, a payment was made on the note by Dunlop to Robert Wardrop of $342, which was sent by Robert Wardrop to the plaintiff; and, in 1858, another payment of $432 was paid in like manner through Robert Wardrop.

In 1859, Robert Wardrop died, and his son William, as administrator, took possession of the note, which he found among his father's papers. In January, 1860, Mr. Dunlop remitted to the plaintiff $432, interest, on the note.

On the 18th of September, 1860, the plaintiff wrote to William Wardrop and, among other things, said : " I write to Mr. Dunlop by the same mail, to make up a statement of the interest due up to date on the due-bill that was in your father's possession, and get it remitted, and informed him that I authorized you to give a receipt for the amount. The due-bill itself, will you be kind enough to retain in your possession until you hear from me ? " By Dunlop's letters to plaintiff, of December 3, 1860, and May 2, 1867, further time for payment was asked, on account of the condition of the country, and the high rate of exchange, and payment was delayed. On the 26th of December, 1866, the plaintiff wrote to the testator as follows:

" The war in America having deranged monetary matters so much, I did not think of writing about it, but if convenient you might send the interest due, which is I think since January, 1860 ; but if you think it would be more advantageous for me and equally convenient for yourself, you might remit me a due-bill for the amount."

He also wrote on the same day a letter to William Wardrop, in which he says :

" I have wrote to Mr. Dunlop by the same mail, and expect an answer from him soon. If you will keep the due-note until I hear from him and write you, good and well, but if you are determined to have it out of your possession, you can mail it."

On the 2d of May, 1867, Dunlop wrote to the plaintiff a letter, in which, after acknowledging the receipt of plaintiff's letter of December 26, 1866, he says: " The exchange between the two countries, just now, is so great it would be much against me to remit the amount of the note or interest, gold to day being about $1.40, but I will send a due-bill for the interest as soon as I ascertain the amount."

In February or March, 1869, William Wardrop came to Dunlop's house at West Troy, and applied to him to pay the interest on the note, which he then had and showed to Dunlop, together with the letter of September 18, 1860. Dunlop paid no money then, but on the 15th of May, 1869, paid to William Wardrop the sum of $1.432, which was indorsed upon the note as $1,000, on principal and two years' interest to January 19, 1862, $432. Within a few days after receiving the foregoing sums, William Wardrop wrote to the plaintiff, stating the amounts received by him upon the note. After the payments of May, 1869, William collected and received of Dunlop and of his executor, Dunlop having died in the meantime, different sums, amounting in all to $2.924, which were indorsed upon the note when paid. The plaintiff did not answer William Wardrop's letter advising him of the payment of $1,432, but in March, 1872, in answer to a letter of William informing him of Dunlop's death, among other things wrote as follows :

" I shall see about getting the necessary documents prepared and sent out to enable you to collect the amount, which I see, was after the $1,000, and two years' interest paid to you, was at January 19, 1869, $4,112, and interest due from that date."

The plaintiff had no notice of any payments being made after

May, 1869, and in August, 1872, brought this action. The referee found in favor of the plaintiff for the whole amount claimed, $6,553.64. The report was confirmed at special term, judgment entered, and the defendants appealed.

*Amasa J. Parker*, for appellants.

*Rufus W. Peckham, Jr.*, for respondent.

MILLER, P. J. The question upon this appeal is, whether William Wardrop had authority to receive the payments made upon the note of Archibald A. Dunlop, deceased, which the plaintiff left with Robert Wardrop. It appears from the receipt given by Robert Wardrop to the plaintiff that it was left for safe-keeping with William's father, in 1859, and passed into William's possession without the knowledge or authority of the plaintiff. The possession thus acquired, of itself, gave William no right to receive money on the note, and if any authority to do so existed and can be upheld, it must arise by virtue of power otherwise conferred.

The defendants claim that William was authorized by the letter sent to him from the plaintiff of September 18, 1860, in which he states that he had written to Dunlop to make up a statement of the interest on the note and get it remitted, and informed Dunlop that he had authorized William to give a receipt for the amount and requested him to retain the due-bill until he heard from the plaintiff. This letter conferred no authority to receive the money, but merely authorized William to give a receipt for the same upon its being remitted by Dunlop. The letter of the plaintiff to Dunlop on the 26th of December, 1866, requesting Dunlop to send the interest, or a due-bill for the amount, and the answer of Dunlop of May 2, 1867, in which he promised to send a due-bill for the interest, also show that neither of them understood that William Wardrop had authority to receive payments on the note. Nor does the letter of the plaintiff to William, of December 26, 1866, confer any authority upon the latter to receive the money. In fact, there is no evidence showing such authority up to the time when the first payments were made or afterward.

It is said that there was an apparent authority to receive the payments, which is as obligatory as if there was actual authority. This position is based upon the assumption that William had possession

of the note, and therefore, and from that fact, was authorized to receive payments upon it. Some of the cases to which we have been referred appear to look in that direction, but the recent case of *Doubleday* v. *Kress*, 50 N. Y. 410, holds to the contrary. In the case cited, an action was brought by the plaintiff to recover the amount of a promissory note made by the defendant and payable to the order of the plaintiff. The plaintiff's son-in-law, one Murray, upon the representation that the defendant wished to pay the interest and renew the note, obtained the same of her and by means of a forged order attached, procured the money on the same. It was held, that the mere possession of the note by the assumed agent, Murray, unindorsed, without any other sustaining facts, was not sufficient to authorize payment to him. The case cited differs somewhat and is far stronger as to the possession than the one at bar, for while in the former the note came lawfully into the hands of Murray with authority to receive the interest and to take a new note, here William Wardrop had no authority whatever from the plaintiff and received the note without the approval of the plaintiff and only because he found it among his father's papers.

In the case of *Bridenbecker* v. *Lowell*, 32 Barb. 9, which is relied upon by the defendant's counsel, there was evidence of express authority to do certain acts, and the remarks of ALLEN, J., at page 17, as to the presumption arising from the authority conferred to assume the apparent right of disposing of property and the effect of being put in possession of notes with apparent authority in respect to them, which was not the case here, as William Wardrop took possession without the plaintiff's knowledge or consent, while entirely appropriate to the case then under consideration, are not, I think, applicable here or in conflict with *Doubleday* v. *Kress*. So also, the observations of the learned judge in *Hutchings* v. *Munger*, 41 N. Y. 158, as to the effect of having possession of notes for the purpose of receiving the money due thereon, must be considered in connection with the facts there presented, and do not, I think, apply to a case where there is no evidence of any authority whatever. The cases of *Williams* v. *Walker*, 2 Sandf. Ch. 325, and *Hatfield* v. *Reynolds*, 34 Barb. 612, sustain the principle that where one employs an attorney to make a loan of money and to take a bond and mortgage from the borrower, and after the loan is made intrusts the attorney with the possession of the bond and mortgage and permits him to receive and indorse payments from time to time until

these payments extinguish the principal, the attorney will, in fact and in law, be held to be authorized to receive the latter as well as the former payments, and if he omits to pay it over, the loss must fall upon the mortgagee.

This is not exactly like the case at bar, because there was a direct authority to receive the payments, and the attorney was acting within the scope of his authority. In view of the cases referred to, it is difficult to see how any actual or apparent authority from the plaintiff can be inferred from the fact of the note being in the possession of William Wardrop, under the circumstances; and the plaintiff was not bound by his acts, unless by some act he ratified or acquiesced in the payments which were made, and thus conferred authority.

It appears that after the payment of $1,432 in May, 1869, with full knowledge of that fact and notice that it had been received, the plaintiff allowed William Wardrop to use the money for nearly three years without any objection whatever on his part, and thus acquiesced in what had been done by him. He was informed that this money was received soon after it was paid, and made no reply until March, 1872, when he wrote to William that after deducting the $1,000 and two years' interest paid to him, $4,112 and interest was due to him. Here was an acknowledgment by the plaintiff that the amount of $1,432 had been properly paid, that he was willing to allow it as a payment, and only claimed what remained. This, I think, precludes him from insisting that a larger sum was due than he named, or that the payment made was not authorized. It was far more than silence, and a direct admission that he claimed no more, which he cannot now retract or recede from. He is clearly bound by this declaration, if not as a ratification of the act of his agent, as an acquiescence in what had been done by a person who had assumed to act in his behalf when the acts of the agent were brought to his knowledge, which is held to be equivalent to express authority. 2 Kent's Com. 613.

The plaintiff, having thus sanctioned the payment of $1,432, and thereby conferred authority for that, I am inclined to think that authority must be inferred as to the subsequent payments. It can scarcely be maintained that he could thus sanction and authorize one payment without conferring an implied authority to receive others. If Dunlop, or his representatives, had been notified that the plaintiff had thus sanctioned one payment, there could be no

question as to the power of the agent to receive others. The plaintiff, however, was informed of it. He did not repudiate it, or notify Dunlop that in fact the money had been paid without authority. By his silence, Dunlop, or his representatives, who, no doubt, acted in good faith, were strengthened in their belief that the money was paid to a duly authorized agent. Had the plaintiff never signified his approval of the payment referred to, his silence might perhaps be excused; but taking this fact and the acquiescence in the payment together, and as the case stands, it must be considered that the plaintiff acquiesced in all the payments which were made.

As the referee was wrong in not deducting the payments made to William Wardrop, the judgment must be reversed and a new trial granted, unless the plaintiff stipulates to deduct said payments and interest, in which case the judgment is affirmed, without costs of appeal to either party.

<em>Judgment affirmed.</em>